**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

MANDY C.,

                              Plaintiff,

    v.
                                          No. 5:18-CV-982
ANDREW SAUL,                                  (CFH)
Commissioner of Social Security,

                              Defendant.
_____

**APPEARANCES:**                           **OF COUNSEL:**

Olinsky Law Group                   HOWARD D. OLINSKY, ESQ.
250 South Clinton Street, Suite 210
Syracuse, New York 13202
Attorney for plaintiff

Social Security Administration        DANIEL STICE TARABELLI, ESQ.
Office of the General Counsel,         Special Assistant U.S. Attorney
15 Sudbury Street, Suite 625
Boston, Massachusetts 02203
Attorney for defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION AND ORDER[1]

    Plaintiff Mandy C. brings this action pursuant to 42 U.S.C. § 405(g) seeking review of a decision by the Commissioner of Social Security ("the Commissioner") denying her application for disability insurance benefits. See Dkt. No. 1 ("Compl."). Plaintiff moves for reversal and remand for the determination of benefits and, in the alternative, for further administrative proceedings, and the Commissioner cross moves

---
[1] Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18. See Dkt. No. 5.

for a judgment on the pleadings. See Dkt. Nos. 9, 11. For the following reasons, plaintiff's motion is granted, the Commissioner's motion is denied, and the matter is reversed and remanded for further administrative proceedings.

## I. Background

On October 7, 2014, plaintiff protectively filed a Title II application for disability insurance benefits alleging a disability onset date of March 7, 2013. See T. 86, 197.[2] Her application was denied on January 5, 2015. See id. at 101. Plaintiff requested a hearing, and a hearing was held on January 25, 2017, before Administrative Law Judge ("ALJ") Elizabeth W. Koennecke. See id. at 51-83. Thereafter, it was determined that a vocational expert was needed, and a supplemental hearing was held on June 20, 2017. See id. at 35-47. The ALJ issued an unfavorable decision on August 16, 2017. See id. at 14-28. On June 15, 2018, the Appeals Council denied plaintiff's request for review, making the ALJ's findings the final determination of the Commissioner. See id. at 1-3. Plaintiff commenced this action on August 15, 2018. See Compl.

## II. Discussion

### A. Standard of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1388(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.

---

[2] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. Dkt. No. 8. Citations refer to the pagination in the bottom right-hand corner of the administrative transcript, not the pagination generated by CM/ECF.

2

1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. See Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)). The substantial evidence standard is "a very deferential standard of review . . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would *have to conclude otherwise.*" Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotations marks omitted). Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence. See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson, 817 F.2d at 986). However, if the correct legal standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

**B. Determination of Disability**

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ." 42 U.S.C. § 423(a)(1). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. § 423(d)(1)(A). A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience. See id. § 423(d)(2)(A). Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques." Id. § 423(d)(3). Additionally, the severity of the impairment is "based on objective medical facts, diagnoses[,] or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience." Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without

4

> considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (spacing added). The plaintiff bears the initial burden of proof to establish each of the first four steps. See DeChirico v. Callahan, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing Berry, 675 F.2d at 467). If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere. Id. (citing Berry, 675 F.2d at 467). "In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision." Barringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d 67, 72 (N.D.N.Y. 2005) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)).

### C. ALJ Decision

Applying the five-step disability sequential evaluation, the ALJ determined that plaintiff had not engaged in substantial gainful activity since March 7, 2013. See T. 18. At step two, the ALJ found that plaintiff had the following severe impairments: neck impairment with associated headaches. See id. She also found that plaintiff had the following non-severe mental impairments: affective disorder, anxiety disorder, unspecified depressive disorder, and panic disorder. See id. at 21. At step three, the

5

ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. See id. at 21. Before reaching step four, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to "perform light work as defined in 20 CFR 404.1567(b) except lift and/or carry 10 pounds occasionally and less than 10 pounds frequently and no requirement to keep her head in a static position or for constant neck movement." Id. at 22. At step four, the ALJ found that plaintiff was capable of performing her past relevant work as a sales supervisor because it "does not require the performance of work-related activities precluded by [her RFC]." Id. at 26. At step five, upon consideration of the testimony of a vocational expert, the ALJ "ma[de] the . . . alternative finding" that there were jobs that existed in significant numbers in the national economy that plaintiff could perform. Id. Thus, the ALJ determined that plaintiff "ha[d] not been under a disability, as defined in the Social Security Act, from March 7, 2013, through the date of this decision." Id. at 27.

### D. Relevant Opinion Evidence
### 1. Christina Caldwell, Psy.D.

On November 24, 2014, Dr. Caldwell performed a consultative psychiatric evaluation of plaintiff and drafted a medical source statement. See T. 407-11. Dr. Caldwell opined that plaintiff "did not evidence limitations in her ability to follow and understand simple directions and instructions or perform simple or complex tasks independently." Id. at 410. However, Dr. Caldwell noted that plaintiff reported "some physical limitations in completing tasks." Id. Further, Dr. Caldwell opined that plaintiff

6

"did not evidence limitations in her ability to maintain attention and concentration, maintain a regular schedule, or learn new tasks." Id.  Moreover, Dr. Caldwell stated that plaintiff "did not evidence limitations in her ability to make appropriate decisions." Id.  Finally, Dr. Caldwell opined that plaintiff did "evidence[] mild to moderate limitation in her ability to relate adequately with others" and "moderate limitations in her ability to appropriately deal with stress." Id.

### E. The ALJ's RFC Determination

Residual Functional Capacity ("RFC") is defined as "'what an individual can still do despite his or her limitations . . . .  Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.'" Pardee v. Astrue, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) (citation omitted)).  "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." Pardee, 631 F. Supp. 2d at 210 (citing 20 C.F.R. § 404.1545(a)).  "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'" Hendrickson v. Astrue, No. 5:11-CV-927 (ESH), 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting Social Security Ruling ("SSR") 85-15, 1985 WL 56857, at *6).  The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is

7

supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984).

When assessing a claimant's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because these consultants are qualified experts in the field of Social Security disability. See Frey ex rel. A.O. v. Astrue, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); Little v. Colvin, No. 5:14-CV-0063 (MAD), 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted and citations). "An ALJ should consider all medical opinions received regarding the claimant." Reider v. Colvin, No. 15-CV-6517P (MWP), 2016 WL 5334436, at *5 (W.D.N.Y. Sept. 23, 2016) (internal quotation marks and citation omitted)); see also SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996) (explaining that "[t]he RFC assessment must be based on *all* of the relevant evidence in the case record."). The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant replacing the consideration of the treatment relationship between the source and the claimant. See 20 C.F.R. § 404.1527(c)(1)-(6).

Plaintiff argues that the ALJ erred by failing to include any mental limitations in the RFC without providing good reasons for rejecting so much of Dr. Caldwell's opinion

8

that plaintiff had "moderate limitations in her ability to appropriately deal with stress." T. 410; see Dkt. No. 9 at 18-19.[3]  In opposition, the Commissioner argues that omission of mental limitations from the RFC was, at most, harmless error. See Dkt. No. 11 at 20.  In particular, the Commissioner contends that "[t]he jobs the ALJ relied upon in finding [p]laintiff not disabled at step five[] all have specific vocational preparation (SVP) of two, meaning they are unskilled," id. at 21 (internal citation omitted), and "'it is well-settled that a limitation to unskilled work . . . sufficiently accounts for limitations relating to stress.'" Id. (quoting Tateman v. Colvin, 296 F. Supp. 3d 608, 613 (W.D.N.Y. 2017)).  In a footnote, the Commissioner acknowledges that "[a] low stress limitation might invalidate the ALJ's step four finding, as the job she relied upon had an SVP of five, making it skilled," but argues that remand is unnecessary because "'a deficiency in an ALJ's step-four analysis does not require remand if the ALJ subsequently made a correct ruling at step five.'" Id. at 22 (quoting Miller v. Colvin, No. 7:12-CV-375 (GLS), 2013 WL 1760856, at *5 (N.D.N.Y. Apr. 24, 2013)).  For the reasons that follow, the Court agrees with plaintiff and, therefore, remands for further administrative proceedings.

In support of her argument, plaintiff cites this Court's decision in Patterson v. Astrue, No. 5:11-CV-1143 (MAD/DEP), 2013 WL 638617 (N.D.N.Y. Jan. 24, 2013), for the proposition that "[i]t is clear that the psychiatric review [technique] required by regulation extends beyond merely considering limitations associated with mental impairments at steps two and three of the sequential analysis, and extends further into the RFC determination." Patterson, 2013 WL 638617, at *12.  The ALJ in Patterson

---

[3]  The Court's citations to the parties' briefs refer to the pagination generated by CM/ECF at the headers of the page, not to the pagination of the individual documents.

9

found at step two of the sequential evaluation analysis that "plaintiff suffer[ed] from multiple severe impairments, including bipolar disorder, impulse control disorder, obsessive compulsive disorder, depression, anxiety, and cocaine and cannabis abuse in remission." Id. at *4. Before proceeding to step four, the ALJ concluded that plaintiff "retain[ed] the RFC to "follow and understand simple directions and instructions, and . . . [wa]s able to maintain attention and concentration [and wa]s limited to routine, repetitive type tasks involving occasional contact with others." Id.

Similar to the plaintiff here, the plaintiff in Patterson argued that "the ALJ erred in failing to consider the four activities identified in paragraph B criteria . . . in arriving at [the] RFC." Id. at 12. The Court noted that, with respect to the psychiatric review technique, the Commissioner has stated that

> [t]he adjudicator must remember that the limitations identified in the paragraph B and C criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. *The mental RFC assessment used at steps four and five of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad areas found in paragraphs B and C of Adult Mental Disorders Listings and 12.00 of the Listing of Impairments, and summarized on the [Psychiatric Review Technique Form].*

Id. (quoting Social Security Ruling ("SSR") 96–8p, 1996 WL 374184, at *4 (emphasis added)). The Court concluded that the ALJ "indicated her awareness of this requirement, noting, after referencing SSR–96–8p, that the following [RFC] assessment reflects a degree of limitation the undersigned as found in the paragraph B mental function analysis." Id. (internal quotation marks omitted). The Court reasoned, "[i]n arriving at her RFC finding, [the] ALJ . . . engaged in a comprehensive discussion of the

10

available evidence, extending over a period of seven pages"; therefore, "[w]hile her decision could have been included greater detail to indicate consideration of the specific paragraph B criteria, . . . it is nonetheless apparent that she did consider those factors and weighed them against the record evidence." Id. Thus, the Court held that "the ALJ did not fail to comply with the psychiatric technique specified by the Commissioner's regulations in arriving at her RFC finding." Id.

In contrast, a recent decision from a court in this Circuit reached a different outcome under circumstances more similar to the present matter. In MacDonald v. Comm'r of Soc. Sec., No. 17-CV-921 (LJV), 2019 WL 3067275 (W.D.N.Y. July 11, 2019), the ALJ determined at step two of his analysis that the plaintiff's medically-determinable impairment of major depressive disorder "d[id] not cause more than a minimal limitation in [the plaintiff's] ability to perform basic mental work activities and [was] therefore non[-]severe." MacDonald, 2019 WL 3067275, at *2 (internal quotation marks omitted). The ALJ in MacDonald stated that

> [t]he limitations identified [regarding the plaintiff's mental impairment] are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listing in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual function capacity assessment reflects the degree of limitation I have found in the "paragraph B" mental function analysis.

Id. (internal quotation marks omitted). The ALJ went on to conclude that the plaintiff had an RFC to perform ""light work, except that she could bend, stoop, crouch[,] and

11

turn her head occasionally," and that the plaintiff was "capable of performing her past relevant work as a bank teller, billing clerk, cashier, and bartender." Id. (internal quotation marks and footnote omitted).

As in this case, the plaintiff in MacDonald challenged the ALJ's RFC determination on the ground that it was "formulated . . . without any mental limitations, despite the decision's own finding that [her] major depressive disorder was a non[-]severe impairment." MacDonald, 2019 WL 3067275, at *3. The court agreed, reasoning that, although "step two of the Commissioner's five-step analysis . . . requires the ALJ to determine whether [a] mental impairment is 'severe' or 'not severe,'" id. (quoting 20 C.F.R. §§ 404.1520a(b)-(d), 416.920a(b)-(d) (internal quotation marks and additional citation omitted)),

> the regulations . . . instruct that even if the ALJ determines that a claimant's medically determinable mental impairments are "not severe," he must further consider and discuss them as part of his [RFC] analysis at step four. Specifically, the ALJ must consider the combined effect of all the claimant's medically determinable impairments, *whether severe or not severe*.

Id. (quoting Wells v. Colvin, 727 F.3d 1061, 1064 (10th Cir. 2013)). In addition, the Court observed that "the Commissioner's procedures do not permit the ALJ to simply rely on his finding of non-severity as a substitute for a proper RFC analysis," but rather, "the ALJ's 'RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and nonmedical evidence.'" Id. (quoting Wells, 727 F.3d at 1064; SSR 96-8p, 1996 WL 374184, at *7). Moreover, the court noted that, "even when an ALJ uses language suggesting he excluded [mental impairments] from consideration as part of his RFC assessment[ ]

12

based on his determination of non-severity at step two, he must explicitly analyze the non[-]severe impairments as part of his RFC analysis, unless he finds at step two that a medically determinable impairment posed *no* restriction on the claimant's work activities." Id. (internal quotation marks and citations omitted). However, the court explained, "where the ALJ finds 'mild' restrictions resulting from a non[-]severe impairment, the ALJ must address those restrictions as part of his RFC analysis." Id. (internal quotation marks and citations omitted). As the court in MacDonald noted, "even if th[e c]ourt concluded that substantial evidence support[ed] the ALJ's finding that [the plaintiff's] mental impairment was non[-]severe, it would still be necessary to remand th[e] case for further consideration [where] the ALJ failed to account [for the plaintiff's] mental limitations when determining [the plaintiff's] RFC." Id. (quoting Parker-Grose v. Astrue, 462 F. App'x 16, 18 (2d Cir. 2012)).

Thus, the court in MacDonald held that the ALJ's statement, following "his conclusion that [the claimant's] mental impairments were non-severe, . . . that these findings do not result in further limitations in work-related functions in the RFC assessment below," was insufficient "lip service" that did not satisfy the regulations because it made only "conclusory reference to the RFC assessment." MacDonald, 2019 WL 3067275, at *3, *4 (internal quotation marks and citation omitted). In addition, the court observed that, "while the ALJ said that he considered the 'mild limitations' caused by [the plaintiff's] major depressive disorder in determining her RFC, the RFC did not even mention any such limitations." Id. at *4. Therefore, the court concluded, had [the plaintiff's "RFC . . . included some limitations reflecting the mild mental impairments that the RFC found at step two, this Court might conclude that any error

13

was harmless." Id. However, because the RFC did not contain any "mental restrictions or limitations whatsoever," the court held that it "[could ]not be certain that the ALJ actually considered her mental issues when addressing her RFC," and remanded for further administrative proceedings. Id. (internal quotation marks and citation omitted).

Here, the ALJ stated that, "[a]s required by SSR 96-8p, the [RFC] has been assessed based on all the evidence with consideration of the limitations and restrictions imposed by the combined effects of all [of plaintiff's] medically determinable impairments." T. 22. However, unlike in Patterson, the ALJ's RFC determination contains no limitations or restrictions with respect to plaintiff's mental impairments. See id.; Patterson, 2013 WL 638617, at *4. Rather, similar to MacDonald, the ALJ's RFC determination here is completely devoid of any "mental restrictions or limitations whatsoever," MacDonald, 2019 WL 3067275, at *4, as it merely limits plaintiff to "light work" with some additional physical limitations. T. 22. As in Patterson, the ALJ "indicated her awareness" of her requirement to engage in a "more detailed assessment by itemizing various functions contained in the broad areas found in paragraph B . . . and 12.00 of the Listing of Impairments," by "referencing SSR-96-8p" in relation to her RFC, Patterson, 2013 WL 638617, at *12. However, similar to MacDonald, given the absence of any "mental restrictions or limitations" in the RFC, the ALJ's reference to the proper standard set forth in the regulations, without more, is insufficient "lip service" and indicates the ALJ "simply rel[ied] on his finding of non-severity as a substitute for a proper RFC analysis." MacDonald, 2019 WL 3067275, at *3; see SSR 96–8p; 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable

14

impairments of which we are aware, including your medically determinable impairments that are not 'severe,' . . . . when we assess your [RFC] . . . .").

Thus, the Court here "cannot be certain that the ALJ actually considered [plaintiff's] mental issues when addressing her RFC." MacDonald, 2019 WL 3067275, at *4. Consequently, remand for further administrative proceedings is necessary. See id.; see also Sweat v. Astrue, No. 08-CV-1108 (FJS/VEB), 2011 WL 2532932 at *6 (N.D.N.Y. May 23, 2011) (finding the ALJ's RFC determination unsupported by substantial evidence and remanding for further administrative proceedings where "[t]he ALJ noted the consultative examiners' findings that [the p]laintiff would have difficulty dealing with stress, but did not explain how he reconciled those findings with his RFC assessment (which contained no determination regarding stress)."). As a final matter, the Court finds unpersuasive the Commissioner's argument that, because the ALJ found at step five that plaintiff was able to perform jobs with an SVP of two, any stress limitation was accounted for, despite the ALJ's possible step four error in concluding that plaintiff was capable of performing past relevant work as a sales supervisor, which has an SVP of five. See Dkt. No. 11 at 21; T. 26. The ALJ's alternative step five finding was reached because "the vocational expert acknowledged not knowing the weight" lifting requirements of plaintiff's job as a box office supervisor—and made no mention of any mental limitations concerning stress. T. 26. Indeed, the cases the Commissioner cites in support of this contention are inapposite. First, unlike in Tateman, the ALJ's RFC determination here does not contain any limitation to unskilled work. See Tateman, 296 F. Supp. 3d at 613. Further, the issue in Miller—whether a correct finding at step five may cure a deficiency at step four—is not at issue here. See Miller, 2013

15

WL 1760856, at *5. Rather, as addressed in detail above, the issue here is that the ALJ failed to account for plaintiff's mental limitations in the RFC, despite finding that she suffered from non-severe mental impairments at step two. See T. 21, 22. Because the Court has determined that remand is required based on the foregoing reasons, the Court declines to reach plaintiff's remaining arguments.

### III. Conclusion

**WHEREFORE**, for the reasons stated above, it is hereby:

**ORDERED**, that Mandy C.'s motion (Dkt. No. 9) is **GRANTED**; and it is further

**ORDERED**, that the Commissioner's motion for judgment on the pleadings (Dkt. No. 11) is **DENIED**; and it is further

**ORDERED**, that this case be **REVERSED AND REMANDED**, pursuant to Sentence Four of 42 U.S.C. § 405(g) for proceedings consistent with this Memorandum-Decision and Order.

**IT IS SO ORDERED.**

Dated: March 16, 2020
      Albany, New York

*Christian F. Hummel*
Christian F. Hummel
U.S. Magistrate Judge